# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00090-CR

**Michael Edward Morrison, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT
### NO. CR-04-696, HONORABLE WILLIAM HENRY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Michael Edward Morrison was charged with possession of more than one but less than four grams of oxycodone. *See* Tex. Health & Safety Code Ann. § 481.115 (West 2003). Following the denial of his motion to suppress, appellant pled guilty. The trial judge assessed punishment at four years' imprisonment, probated for four years. In two issues, appellant contends the trial judge erred in denying his motion to suppress. We affirm the trial court's judgment.

## Background

On the morning of July 4, 2004, Trooper Joshua Ray stopped appellant for driving nearly twenty miles over the speed limit. Ray was the only witness to testify at the suppression hearing,[1] and he testified that he approached appellant's car and began to conduct the

_____

[1] The State also introduced a videotape of the traffic stop and arrest.

"seven step violator contact" in which he greets a suspect, identifies himself, and states the violation. Appellant admitted to speeding and provided his driver's license but admitted that he did not have proof of insurance. Ray said that appellant was "a little excited" and kept talking, interrupting Ray as he tried to complete his introductions.

Appellant's eyes were slightly bloodshot, so Ray conducted the horizontal gaze nystagmus test, ultimately concluding that appellant was not intoxicated. However, Ray testified that throughout the traffic stop, appellant talked loudly, sometimes "yelling" at Ray, talked "with his hands a lot, waving his hands around, moving around a lot," and was "somewhat aggressive." Appellant's behavior made Ray nervous, so Ray "bladed himself," assuming a "defensive posture in case" appellant became aggressive. When Ray checked appellant's driver's license, he learned that appellant had a criminal history[2] and asked for a backup unit to be sent to the scene. Ray testified that based on his training and experience and because of appellant's unusual behavior, Ray "had an idea something wasn't right" and thought that "[t]here was some form of criminal activity" afoot. He testified that appellant was initially cooperative but that after Ray said he was going to ticket appellant, appellant became "very aggressive," cursing, yelling, and "throwing his hands about." Ray testified that he decided to wait until backup arrived to ask to search appellant because in his experience, "if I talk any more it just gets worse during the contact."

Once Ray saw backup had arrived, which occurred either as appellant was signing the ticket or very soon after, Ray decided to search appellant for weapons. Ray told appellant that he was making Ray nervous and that Ray was going to conduct a pat-down search to ensure

---

[2] The record does not provide the specifics of appellant's criminal history. Ray testified that appellant had "drug arrests" and a "DWI maybe" and that appellant said he had been arrested for a bar fight.

2

appellant did not have any weapons. During the search, Ray found a small pocket knife in appellant's left pocket and felt a bulge in appellant's right back pocket that did not feel like a wallet. When Ray felt that bulge, he asked appellant what it was, and appellant first said he did not know and then "he cursed, I believe something like, 'Damn, I know what that is,'" and started to pull his hand away. Based on appellant's reaction, Ray concluded that the bulge was "something he's not supposed to have." Ray again asked appellant what it was, and appellant said it was marihuana. Ray took the marihuana from appellant's pocket and placed appellant under arrest for possession of marihuana. Ray and the backup officer then searched the car, during which they found in the front passenger seat area a prescription bottle without appellant's name on it that contained eight pills of different kinds, including oxycodone.

At the hearing, appellant argued that the pat-down exceeded the limits set out in *Terry v. Ohio*, 392 U.S. 1 (1968), and that once the citation was issued, there was no further reason to detain him.[3] The trial court denied appellant's motion to suppress without making findings of fact.

**Discussion**

In two issues, appellant argues that the trial court erred in denying his motion to suppress, contending (1) that the traffic violation did not justify a pat-down search and (2) that Ray's pat-down search exceeded the permissible limits of a pat-down search for weapons.

In reviewing a trial court's ruling on a motion to suppress, we give almost total deference to a trial court's determination of historical facts that are based on an evaluation of

---

[3] Ray testified that he wanted to ensure that appellant did not have any weapons before continuing the issuance of the citation. The video of the traffic appears to show that Ray searched appellant shortly after appellant signed the citation but before Ray issued the ticket to appellant.

credibility and demeanor of the witnesses, and we review de novo the court's application of the law to those facts. *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005). When a trial court does not make findings of fact, we review the evidence in a light favorable to the court's ruling and assume that it made implicit findings supporting its determination. *Id*. We will uphold the trial court's decision if "it is correct under any theory of law applicable to the case." *Id.*

The Fourth Amendment prohibits unreasonable searches and seizures, U.S. Const. amend. IV, and a search without a warrant is per se unreasonable, subject to a few well-established exceptions. *Katz v. United States*, 389 U.S. 347, 357 (1967). *Terry* provides one such exception when an officer justifiably believes an individual may be armed and dangerous. In such a case, the officer may conduct a pat-down search for weapons if he can identify "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" the search. 392 U.S. at 21-22. A *Terry* search is limited to that which is necessary for the discovery of weapons and is limited to a pat-down of the suspect's exterior clothing. *Id.* at 25-26. If during the *Terry* search the officer discovers something that, based on his training, education, and experience, he believes is nonthreatening contraband, he may seize the contraband without a warrant. *Minnesota v. Dickerson*, 508 U.S. 366, 375-76 (1993). However, the criminality of the suspected contraband must be "immediately apparent" to the officer. *Id.* at 375, 378-79.

In his first issue, appellant complains that the pat-down search was unjustified under *Terry* because he posed no danger to Ray at the time Ray started the search—the traffic violation occurred in the daytime, his driver's license was clear and without any warrants, he cooperated with Ray by performing the HGN test and signing the citations, and Ray did not receive any dispatch warning that appellant might be armed or dangerous. We disagree.

We must give great deference to the trial court's determination of the historical facts. *See Estrada*, 154 S.W.3d at 607. The trial court impliedly found Ray to be a credible witness and stated that Ray had articulated sufficient justification for conducting the pat-down, referencing Ray's testimony that appellant was excited and "acting inappropriately and swearing." Ray testified that appellant's demeanor was unusual for a traffic stop and that he assumed a defensive posture and called for back-up because he felt, based on his training and experience, that "something wasn't right" and that he should be concerned for his safety. Ray testified that after backup arrived, he wanted to be sure appellant did not have any weapons before Ray continued the contact with appellant and issued the citation to him.

The trial court did not abuse its discretion in finding that Ray acted reasonably in patting appellant down to ensure that he was not armed or in concluding that Ray sufficiently articulated specific facts to warrant the pat-down search. We overrule appellant's first issue.

In his second issue, appellant contends that the search exceeded the legitimate scope of a pat-down weapons search. He argues that the search did not make the incriminating nature of the marihuana immediately apparent and that, therefore, the search went beyond what was necessary to determine if he was armed. *See Terry*, 392 U.S. at 25-26.

When Ray conducted the search, he limited it to appellant's outer clothing. During the pat-down, Ray found a legal pocket-knife in appellant's left pocket. Appellant then calmly allowed the pat-down to continue until Ray patted appellant's back right pocket, where he felt a bulge that did not feel like a wallet. Although Ray admitted that the bulge did not feel like a gun or a knife, he asked appellant what was in the pocket. Appellant first said, "I don't know," and then cursed, said he knew what was in the pocket, and started to "pull his hand away," which led Ray to

5

believe that the item in appellant's pocket was "something he's not supposed to have." Ray asked again, and appellant admitted he had marihuana in his pocket.

Appellant has provided us with no authority, and we know of none, that bars an officer from simply asking a detainee what is in his pocket during a proper *Terry* pat-down. *See Williams v. State*, 27 S.W.3d 688, 690 n.1 (Tex. App.—Beaumont 2000, no pet.). Indeed, the Supreme Court has held that an "officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions. But the detainee is not obliged to respond." *Berkemer v. McCarty*, 468 U.S. 420, 439-40 (1984). Thus, although Ray was permitted to ask appellant questions to confirm his suspicions, appellant was not obligated to answer. *See id.* However, once appellant admitted that the bulge was marihuana, Ray was justified in retrieving the contraband. *See id.* ("unless the detainee's answers provide the officer with probable cause to arrest him, he must then be released"). Ray did not examine the bulge or immediately retrieve the item from appellant's pocket; he merely patted it down externally to feel for weapons. Not until appellant admitted he had marihuana did Ray lawfully reach into appellant's pocket to seize the contraband. *See Dickerson*, 508 US. at 369, 378. We hold that the trial court did not err in determining that Ray acted within the scope of a legal pat-down.[4] We overrule appellant's second issue.

---

[4] We note that there are cases holding that if a person commits an arrestable traffic offense, he is subject to search incident to arrest, even if the decision to arrest him is made after the search is conducted. *See, e.g.*, *State v. Ballard*, 987 S.W.2d 889, 892-93 (Tex. Crim. App. 1999); *Hart v. State*, 235 S.W.3d 858, 862-63 (Tex. App.—Eastland 2007, pet. dism'd); *compare with Berkemer v. McCarty*, 468 U.S. 420, 439-40 (1984) (noting that *Miranda* protections do not apply to suspects subject to "comparatively nonthreatening" *Terry* stops and holding, "The similarly noncoercive aspect of ordinary traffic stops prompts us to hold that persons temporarily detained pursuant to such stops are not 'in custody' for the purposes of *Miranda*."). However, it is unnecessary to consider that case law here, where Ray did not exceed the bounds of a legal *Terry* stop.

**Conclusion**

We have overruled both of appellant's issues on appeal and hold that the trial court did not err in denying appellant's motion to suppress the oxycodone found as a result of his arrest for possession of marihuana. We therefore affirm the judgment of the trial court.

_____

David Puryear, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed:   October 2, 2008

Do Not Publish